IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| VENTANA HILLS ASSOCIATES, LTD., and VENTANA HILLS PHASE II, L.P., | Case No. 09-41755 and Case No. 09-41758 (Jointly Administered) |
| Debtors. | Hon. Pamela S. Hollis |

**INTERIM ORDER AND STIPULATION (I) AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING OF ADEQUATE PROTECTION,
(II) GRANTING ADEQUATE PROTECTION AND (III) APPROVING THE FORM
AND METHOD OF NOTICE OF, AND SCHEDULING FINAL HEARING ON USE OF
CASH COLLATERAL**

This cause coming to be heard on the motion of Ventana Hills Associates, Ltd., an Ohio limited partnership, and Ventana Hills Phase II, L.P., an Ohio limited partnership, debtor and debtor-in-possession in the above-captioned jointly administered cases (the "Debtors"), for entry of an order authorizing the Debtors' interim use of cash collateral, granting adequate protection, and approving of the form and method of notice and scheduling of a final hearing on the use of cash collateral (the "Motion"), sufficient notice having been given, the Court having considered the pleadings, the Affidavit of Ivan Djurin in Support of First Day Motions, statements of counsel, and otherwise being fully informed in the premises:

**IT IS HEREBY ORDERED:**

1. Debtors' Motion is granted, on an interim basis, limited to the terms and conditions set forth in this Interim Order.

2. This Court has jurisdiction of this chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral and shall pay certain critical expenses pursuant to the Budget attached hereto and incorporated herein as Exhibit A (the "Budget") for the period from November 17, 2009 through and including the earlier of (a) the date scheduled for the final hearing on the Motion, or (b) the occurrence of any default under this Interim Order (the "Expiration Date").

4. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis, and the Debtors warrant and represent that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of their businesses for the period set forth in the Budget. In no event shall the Debtors use any Cash Collateral to pay any items except as set forth in the Budget or as may be consented to in writing by the Lender. The Debtors further agree not to incur any administrative expenses other than set forth in the Budget or the following month's Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing. Not later than the second (2nd) business day of each week, the Debtors shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for such week, the dollar variance and the percentage variance (the "Variance Percent") of such actual receipts and disbursements from those reflected in the Budget for that week. Any disbursement by the Debtors other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default under this Interim Order unless the Lender consents to such disbursements in writing; provided, however, that the Debtors may make payments in excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of all actual disbursements for each week shall

not exceed ten (10%) percent of the budgeted disbursements for that week and shall at no time exceed the actual cash receipts of the Debtors for the month during which the Budget week falls; and (ii) the Variance Percent of the aggregate of all actual disbursements for any consecutive four-week period shall not exceed ten (10%) percent of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Variance"). The Adequate Protection Payments, as provided in the Budget, shall be paid to Lender in full (with no variance) on the weeks that they are budgeted to the extent that funds are available. At the end of each month, the Debtors shall disburse all Cash Collateral in excess of the amounts set forth in the Budget plus the Variance Percent to Lender: first, to fund any unpaid Adequate Protection Payments, and then to be held in escrow and applied toward the payment of currently outstanding real estate taxes on the Collateral.

5. The Lender is not required to advance to the Debtors any amounts that may be available for lending under its prepetition loan agreements with the Debtors. So long as no defaults exist under this Interim Order, the Lender shall consent to the use by the Debtors of such amounts of Cash Collateral as are deposited in the Debtors' accounts and authorized for use by the Debtors pursuant to the Budget and the terms and conditions of this Interim Order.

6. The Debtors are authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lender pursuant to the terms and conditions set forth in this Interim Order, pending a final hearing on Debtors' Motion, including, without limitation, the Adequate Protection Payments listed in the Budget.

7. The Lender is hereby granted, as adequate protection for any diminution in the value of its prepetition collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "Replacement

Liens") in and upon all of the categories and types of collateral in which they held a security interest and lien as of the Petition Date (the "Prepetition Collateral"), including, without limitation, Cash Collateral, and the proceeds thereof, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in the same order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "Collateral").

8. The Replacement Liens granted by this Interim Order: (i) are in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and (ii) are valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the Debtors or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

9. The use of Cash Collateral by the Debtors shall give rise to an obligation of the Debtors to the Lender for repayment of an amount equal to the amount of the Cash Collateral used and shall be secured by the Replacement Liens.

10. In addition to the Replacement Liens granted to the Lender pursuant to this Interim Order, the Lender is hereby granted a superpriority administrative claim under Section 507(b) of the Bankruptcy Code (the "507(b) Claim") in the full amount allowable under Section 507(b) and the Bankruptcy Code.

11. Notwithstanding anything to the contrary, the Replacement Liens and 507(b) Claim granted to the Lender pursuant to this Order shall be subject and subordinate to the

amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a). No other carve-outs requested in the Motion are agreed to or approved at this time.

12. The Debtors are required to promptly deliver to the Lender such other financial and other information concerning the business and affairs of the Debtors as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Lender's prepetition loan agreements.

13. The Debtors will permit the Lender, the Lender's agents, attorneys and any consultants engaged by the Lender full access to examine the respective corporate, financial and operating records, and, at the Debtors' expense, make copies thereof, inspect the assets, properties, operations and affairs of the Debtors, visit any or all of the offices of the Debtors to discuss such matters with its officers and independent auditors (and the Debtors hereby authorize such independent auditors to discuss such matters with the Lender, its agents and consultants). The Debtors will cooperate with the Lender, its agents, attorneys, and consultants in all respects, including, without limitation, granting and facilitating access to the real property for the purpose of completing an appraisal.

14. The Lender and the Debtors may make non-material modifications or amendments to the Budget or this Interim Order, to take effect only upon written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determine to do so, written notification of such extension shall be provided to all parties in interest.

15. A final hearing (the "Final Hearing") to consider entry of a final Cash Collateral Order authorizing on a final basis, *inter alia*, the use of Lender's Cash Collateral and the grant of adequate protection be, and it hereby is set for December 8, 2009 at 10:30 a.m.

16. Debtors are directed to send notice of the Final Hearing to all creditors and parties in interest on or before __11/23__, 2009.

Dated: __NOV 17 2009__

ENTER:

_____
Bankruptcy Judge

STIPULATED BY:

VENTANA HILLS ASSOCIATES, LTD.

By: _____
Its: ___Attorney___

VENTANA HILLS PHASE II, L.P.

By: _____
Its: ___Attorney___

ANGLO IRISH BANK

By: _____
Its: _____

DRAFT

**Ventana Hills Associates**
Monthly Budget for Interim Cash Collateral Order

| | Week Ended 11/21/09 | Week Ended 11/28/09 | Week Ended 12/5/09 | Week Ended 12/12/09 | Forecast 4 Weeks Ended 12/12/09 |
|---|---|---|---|---|---|
| **REVENUE** | | | | | |
| Apartment Rentals | - | - | - | - | - |
| Furniture Income | - | - | - | - | - |
| Late Charges | - | - | - | - | - |
| Credit Check / App Fees Revenue | - | - | - | - | - |
| Miscellaneous Revenue (Pets, etc.) | - | - | - | - | - |
| **TOTAL REVENUE** | 200,382 | - | 300,000 | 157,799 | 658,181 |
| **PAYROLL & BENEFITS** | | | | | |
| Management Salaries | 1,616 | - | 1,616 | - | 3,232 |
| Payroll Allocations (Mgr) | - | - | - | - | - |
| Assistant Manager | - | - | - | - | - |
| Office Salaries / Leasing | 1,680 | - | 1,680 | - | 3,360 |
| Regional Maintenance Allocations | - | - | - | - | - |
| Maintenance Supervisor Wages | 1,572 | - | 1,572 | - | 3,144 |
| Maintenance/Grounds Wages | 2,680 | - | 2,680 | - | 5,360 |
| Total Maintenance Salaries | 4,252 | - | 4,252 | - | 8,504 |
| Payroll Allocations (Painting) | - | - | - | - | - |
| Leasing Commission | - | - | - | - | - |
| Renewal Bonus | - | - | - | - | - |
| Employee Rent Discounts | - | - | - | - | - |
| Pool Salaries | - | - | - | - | - |
| Taxes & Benefits | 1,000 | - | 994 | - | 1,994 |
| Health Insurance | 1,799 | - | - | 1,799 | 3,598 |
| Worker's Compensation | 954 | 477 | - | - | 1,431 |
| **TOTAL PAYROLL & BENEFITS** | 11,301 | 477 | 8,542 | 1,799 | 22,119 |
| **GENERAL & ADMINISTRATIVE** | | | | | |
| Accounting & Auditing | - | - | - | - | - |
| Advertising & Promotion | - | 5,747 | - | - | 5,747 |
| Amenities | - | - | - | - | - |
| Answering Service | - | 64 | - | - | 64 |
| Automobile Expense | - | - | - | - | - |
| Bad Debts | - | - | - | - | - |
| Service Charges | - | 420 | - | - | 420 |
| Cable/Internet | - | 76 | - | - | 76 |
| Computer License Fees | - | 105 | - | - | 105 |
| Copier Lease | - | 271 | - | - | 271 |
| Copies, Printing & Forms | - | 120 | - | - | 120 |
| Credit Card Discounts | - | - | - | - | - |
| Credit Report Processing | - | 360 | - | - | 360 |
| Furniture Rental | - | - | - | - | - |
| Legal | - | - | - | - | - |
| Meals | - | - | - | - | - |
| Membership Dues | - | - | - | - | - |
| Mileage Reimbursement | - | - | - | - | - |
| Monitoring Fees | - | - | - | - | - |
| Payroll Processing | - | 135 | - | - | 135 |
| Postage & Delivery | - | 200 | - | - | 200 |
| Office Expense | - | 350 | - | - | 350 |
| Professional Development | - | - | - | - | - |
| Recruiting | - | - | - | - | - |
| Telephone | - | 570 | - | - | 570 |
| Telephone - Mobile | - | - | - | - | - |
| Total Telephone / Communications | - | 570 | - | - | 570 |
| Equipment Rental | - | - | - | - | - |
| Uniforms | - | - | - | - | - |
| Management Fees | - | - | - | - | - |
| Miscellaneous | - | 300 | - | - | 300 |
| **TOTAL GENERAL & ADMINISTRATIVE** | - | 8,718 | - | - | 8,718 |
| **UTILITIES** | | | | | |
| Alarm Service | - | - | - | - | - |
| Electricity - Common | 8,788 | - | - | - | 8,788 |
| Electricity - Vacant | 2,000 | - | - | - | 2,000 |
| Electricity - Other | - | - | - | - | - |
| Total Electricity | 10,788 | - | - | - | 10,788 |
| Gas - Common | 2,000 | - | - | - | 2,000 |
| Gas - Vacant | 4,300 | - | - | - | 4,300 |
| Gas - Other | - | - | - | - | - |

Privileged & Confidential
Tentative & Preliminary - Subject to Material Change

**Ventana Hills Associates**
Monthly Budget for Interim Cash Collateral Order

| | Week Ended 11/21/09 | Week Ended 11/28/09 | Week Ended 12/5/09 | Week Ended 12/12/09 | Forecast 4 Weeks Ended 12/12/09 |
|---|---|---|---|---|---|
| Total Fuel & Gas | 6,300 | - | - | - | 6,300 |
| Water & Sewer | 21,347 | - | - | - | 21,347 |
| Trash Equipment Rental | - | - | - | - | - |
| Trash Removal | 2,360 | - | - | - | 2,360 |
| Cable TV | - | - | - | - | - |
| **TOTAL UTILITIES** | 40,795 | - | - | - | 40,795 |
| | | | | | |
| **REPAIRS & MAINTENANCE** | | | | | |
| Alarm Systems | - | 30 | - | - | 30 |
| Appliances - Repairs | - | 150 | - | - | 150 |
| Appliances - Supplies | - | 80 | - | - | 80 |
| Electric - Supplies | - | - | - | - | - |
| Supplies | - | 1,300 | - | - | 1,300 |
| HVAC - Repairs | - | 150 | - | - | 150 |
| HVAC - Supplies | - | 100 | - | - | 100 |
| Cleaning & Janitorial | - | - | - | - | - |
| Inspections | - | - | - | - | - |
| Janitorial Supplies | - | - | - | - | - |
| Plumbing - Repairs | - | 150 | - | - | 150 |
| Plumbing - Supplies | - | 100 | - | - | 100 |
| Window Washing | - | - | - | - | - |
| Repairs | - | - | - | - | - |
| Pool Expenses | - | - | - | - | - |
| Grounds | - | 200 | - | - | 200 |
| Painting & Decorating | - | - | - | - | - |
| Snow Removal | - | - | - | - | - |
| Landscape - Supplies | - | 600 | - | - | 600 |
| Security | - | - | - | - | - |
| Uniforms | - | - | - | - | - |
| Exterminator | - | 343 | - | - | 343 |
| Miscellaneous | - | - | - | - | - |
| **TOTAL REPAIRS & MAINTENANCE** | - | 3,203 | - | - | 3,203 |
| | | | | | |
| **RENEWAL EXPENSE** | - | - | - | - | - |
| | | | | | |
| **TURNOVER EXPENSE** | - | - | - | - | - |
| | | | | | |
| **OTHER OPERATING EXPENSES** | | | | | |
| Accounting Fees | - | - | - | - | - |
| Insurance - Auto | - | - | - | - | - |
| Insurance - Package | 11,786 | 5,893 | - | - | 17,679 |
| Reserves | | | | | |
| Real Estate Taxes | - | - | - | - | - |
| **TOTAL OPERATING EXPENSES** | 11,786 | 5,893 | - | - | 17,679 |
| | | | | | |
| **LOAN PAYABLES** | | | | | |
| Adequate protection payments (see A) | 301,479 | - | - | 301,479 | 602,958 |
| Loan Payable - Chrysler | - | - | - | - | - |
| **TOTAL LOAN PAYABLES** | 301,479 | - | - | 301,479 | 602,958 |
| | | | | | |
| **CAPEX** | | | | | |
| Fixed Assets | - | - | - | - | - |
| Building Improvements | - | - | - | - | - |
| Exterior Improvements | - | - | - | - | - |
| Unit Improvements | - | - | - | - | - |
| Appliances | - | - | - | - | - |
| Marketing Development | - | - | - | - | - |
| **TOTAL CAPEX** | - | - | - | - | - |
| | | | | | |
| **EQUITY DISTRIBUTIONS** | - | - | - | - | - |
| | | | | | |
| **CASH FLOW SURPLUS/(DEFICIT)** | (164,979) | (18,291) | 291,458 | (145,479) | (37,291) |

Footnotes:

(A) The amount for Adequate Protection Payments will be paid to the extent that csah is available up to the full amount of the Adequate Protection Payments